Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/08/2017 08:11 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ROBERT L. SCHWADERER, APPELLANT.
___ N.W.2d ___

Filed June 16, 2017.    No. S-16-501.

1. **Trial: Evidence: Appeal and Error.** An appellate court reviews the
   trial court's conclusions with regard to evidentiary foundation and wit-
   ness qualification for an abuse of discretion.
2. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings
   under the residual hearsay exception, an appellate court reviews for
   clear error the factual findings underpinning a trial court's hearsay rul-
   ing and reviews de novo the court's ultimate determination to admit
   evidence over a hearsay objection.
3. **Jury Instructions: Appeal and Error.** Whether jury instructions are
   correct is a question of law, which an appellate court resolves indepen-
   dently of the lower court's decision.
4. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of inef-
   fective assistance of trial counsel may be determined on direct appeal is
   a question of law.
5. ____: ____. In reviewing claims of ineffective assistance of counsel on
   direct appeal, an appellate court decides only questions of law: Are the
   undisputed facts contained within the record sufficient to conclusively
   determine whether counsel did or did not provide effective assistance
   and whether the defendant was or was not prejudiced by counsel's
   alleged deficient performance?
6. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evi-
   dence claim, whether the evidence is direct, circumstantial, or a com-
   bination thereof, the standard is the same: An appellate court does not
   resolve conflicts in the evidence, pass on the credibility of witnesses, or
   reweigh the evidence; such matters are for the finder of fact.
7. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court.

8. **Convictions: Proof.** To sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be reasonable proof that the measuring device was accurate and functioning properly.

9. **Evidence: Proof.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

10. **Rules of Evidence: Proof.** A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.

11. ____: ____. If the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of Neb. Rev. Stat. § 27-901 (Reissue 2016).

12. **Rules of Evidence: Circumstantial Evidence: Proof.** Under Neb. Rev. Stat. § 27-901(2)(d) (Reissue 2016), a proponent may authenticate a document by circumstantial evidence, or its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

13. **Trial: Appeal and Error.** On appeal, a defendant may not assert a different ground for his or her objection than was offered at trial.

14. **Trial: Hearsay: Proof.** It is best practice, when overruling a hearsay objection on the ground that an out-of-court statement is not received for the truth of the matter asserted, for a trial court to identify the specific nonhearsay purpose for which the out-of-court statement is relevant and probative.

15. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

16. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred.

17. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief will recognize whether the claim was brought before the appellate court.

18. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal

does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

19. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A court may address the two prongs of this test, deficient performance and prejudice, in either order.

20. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Yohance Christie for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Robert L. Schwaderer challenges his drug-related convictions and sentences. He raises numerous issues, but we focus primarily on (1) the admissibility of evidence of drug weights and "owe notes" and (2) the propriety of jury admonishments and instructions. Because we find no prejudicial error, we affirm the judgment. We also reject three claims of ineffective assistance of trial counsel and decline to reach a fourth claim because the record is not sufficient.

## II. BACKGROUND

### 1. Arrest and Charges

Schwaderer was arrested for driving under suspension and false reporting. A search incident to his arrest yielded a significant amount of packaged methamphetamine, approximately $3,300 in cash, a digital scale, empty baggies, and several notebooks and notepads. A later search of his person at the county jail produced another smaller amount of separately packaged methamphetamine. Schwaderer was then charged with possession with intent to deliver methamphetamine, at least 28 grams but less than 140 grams; possession of money to be used, violating Neb. Rev. Stat. § 28-416(1) (Supp. 2015) (drug money); and false reporting.

### 2. Trial

At trial, Schwaderer did not contest his actual possession of the methamphetamine but he alleged that he was only a user and did not possess the controlled substance with intent to deliver. Therefore, the main issues at trial were (1) whether Schwaderer was a seller—rather than a mere user—of methamphetamine and (2) how much methamphetamine he actually possessed.

#### (a) "Owe Notes"

The State offered the seized notebooks and notepads into evidence as indicative of sales of narcotics. Schwaderer objected to their admittance on authentication, foundation, relevance, and hearsay grounds. The court overruled the objections, received the items into evidence as exhibits 11 through 15, and soon thereafter recessed for the day. The following morning, the court revisited its ruling. When the jurors were seated, the court instructed as follows:

> Jurors, yesterday, as a part of the evidence received by the Court, the Court did receive Exhibits 11, 12, 13, 14 and 15.
>
> I'm, at this time, giving a cautionary instruction regarding those exhibits. The Court has received those

exhibits not for the truth of the matter asserted in the statements contained within those exhibits, but has received those exhibits for the purposes of trial today.

The State later called on an individual who had previously worked for the Lincoln/Lancaster County Narcotics Unit to explain the significance of the writings within the notebooks and notepads and to testify to the general practices of narcotics dealers. He testified as an expert witness and opined that the notebooks were records of narcotics sales and that they, taken with the large amount of methamphetamine and cash found on Schwaderer, indicated that Schwaderer sold methamphetamine.

The expert witness testified that through his work with the narcotics unit, he became familiar with "the drug culture" and the terms and procedures used for sales of narcotics. When the State attempted to elicit testimony from him concerning the meaning of words similar to those found within the notepads, Schwaderer objected on relevance and a side bar discussion was held. Schwaderer reminded the court that the notepads were received with the limiting instruction that they were not to be considered for the truth of the matter asserted within. He therefore objected to the witness' testimony as unfairly and highly prejudicial. The State responded that the testimony "can be used to explain the items in those notebooks," and the court overruled the objection. The court later explained, during another side bar discussion, its understanding of the limiting instruction:

> The cautionary instruction was they've — those exhibits were received not for the truth of the matter asserted in the statements contained within those exhibits. For example, if Joe Blow — if it says Joe Blow owes me $25 for an eight ball, it's not the truth of that asserted fact that Joe Blow actually does owe me $25 for that eight ball. That was what the cautionary instruction was going to.

For any other purpose, that it illustrates something else, that it — for any other purpose, it is received.

Over Schwaderer's objections, the notebooks and notepads were then published to the jury. The expert witness examined each page and testified to his opinion as to what various terms and phrases contained within meant. He concluded that the notebooks and notepads were consistent with ledgers for transactions involving controlled substances that he had seen in past narcotics investigations.

In the final instructions to the jury, instruction No. 8 stated: "Exhibits #11, #12, #13, #14, and #15 have been admitted for the limited purpose of showing the character and use of the location where they were found and not for the truth of any matters asserted in Exhibits #11, #12, #13, #14 and #15."

### (b) Weight of Methamphetamine

While the State repeatedly emphasized that the "owe notes" were "consistent with the sales of methamphetamine," it also heavily relied on the large amount of methamphetamine as showing an intent to distribute for sale.

A forensic scientist testified to the processing and testing of the substance found on Schwaderer. The forensic scientist testified that the substance tested positive for methamphetamine. She additionally testified to the methods used to weigh the methamphetamine and the calibrations and tests done on the scales used. She testified that the large amount of packaged methamphetamine weighed 34.06 grams, plus or minus 0.15 grams, and that the separate smaller amount of packaged methamphetamine weighed 0.3580 grams, plus or minus 0.0056 grams.

The forensic scientist additionally testified to the purity analysis conducted on the methamphetamine. The court received into evidence the scientist's report that showed the purity testing confirmed the large amount of packaged methamphetamine to be at least 31 grams of actual, undiluted methamphetamine. During closing argument, the State noted

that this amount of methamphetamine would be about 170 doses of methamphetamine and that a simple user would not have that much with them at any given time.

### 3. Convictions and Sentences

On this evidence, the jury found Schwaderer guilty of possession with intent to deliver methamphetamine, at least 28 grams but less than 140 grams; possession of drug money; and false reporting. The court sentenced Schwaderer to concurrent sentences of 10 to 15 years' imprisonment for possession with intent to deliver, 2 to 2 years' imprisonment for possession of drug money, and 1 to 1 year's imprisonment for false reporting.

Schwaderer timely appealed, and we moved the appeal to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Schwaderer alleges, restated, that (1) the district court erred in (a) admitting testimony regarding the weight of the methamphetamine, (b) admitting the notebooks and notepads seized from Schwaderer's vehicle into evidence, (c) its instructions to the jury, and (d) admitting expert testimony; (2) he received ineffective assistance of counsel "as a result of the acts and omissions of . . . trial counsel"; (3) there was insufficient evidence; and (4) the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion.[2]

[2] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[2] *State v. Richardson*, 285 Neb. 847, 830 N.W.2d 183 (2013).

underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection.[3]

[3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[4]

[4,5] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[5] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?[6]

[6] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[7]

[7] We will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[8]

## V. ANALYSIS

### 1. Weight of Methamphetamine

Schwaderer first alleges that the district court erred by allowing testimony of the weight of the methamphetamine found on Schwaderer. He argues that such testimony should have been excluded because it was based on hearsay, lacked

---

[3] *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

[4] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[5] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

[6] *Id.*

[7] *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016).

[8] *Id.*

sufficient foundation, and violated his right of confrontation. He suggests that the witness lacked personal knowledge of the calibration because she testified that an outside company calibrates the scales twice a year. But, he does not account for the same witness' testimony as to the other procedures used to verify the accuracy and reliability of the scales.

[8] To sustain a conviction based on information derived from an electronic or mechanical measuring device, there must be reasonable proof that the measuring device was accurate and functioning properly.[9] And there was.

Assuming that it was error to allow the witness to testify to the calibration done by an outside company, such error was harmless, because the accuracy of the scales had already been established. The witness provided sufficient foundation of personal knowledge concerning calibration procedures performed by the laboratory and the witness herself. She testified that she personally used a known weight to measure the accuracy and variability of the scales used to weigh the methamphetamine. She further testified that she would use a known weight on a daily and monthly basis to check the accuracy of the scales. Though she did not classify such procedures as "calibration," we agree with the district court that the procedures met the definition of calibration and were sufficient to show the accuracy of the scales.

The testimony provided identified the time period during which the scales were tested against known weights and established that the scales were operating correctly. Therefore, there was sufficient foundation regarding the calibration of the scales and the district court did not err in allowing the witness to testify to the weight of the methamphetamine.

## 2. NOTEBOOKS AND NOTEPADS

Schwaderer next assigns that the district court erred in admitting the notebooks and notepads found in Schwaderer's vehicle into evidence because they were inadmissible hearsay

---

[9] *State v. Richardson, supra* note 2.

and were not properly authenticated. Although we have not confronted such records, numerous courts have.[10] And we follow their reasoning.

## (a) Hearsay

Schwaderer alleges that the notebooks and notepads were inadmissible hearsay because they "were received for the truth of the matter asserted by the declarants,"[11] who Schwaderer suggests were the testifying officers. We disagree and note that this argument relies on a mistaken understanding of the definition of hearsay.

"Hearsay is a statement, *other than the one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted."[12] Therefore, the declarant is the author of the writings contained within the notebooks and notepads—not the officers testifying to the seizure and contents of the notebooks and notepads. And, the truth of the matter asserted refers to *the statements made by the declarant*—not the professed reason for why the statements are offered into evidence.

The notebooks and notepads appeared to be "owe notes" or ledgers evidencing the exchange of money for various

---

[10] See, e.g., *United States v. Southard*, 700 F.2d 1 (1st Cir. 1983) (documents containing records of bets not hearsay as proof of scope of defendant's gambling operations), *cert. denied sub nom. Ferris v. United States*, 464 U.S. 823, 104 S. Ct. 89, 78 L. Ed. 2d 97; *United States v. Wilson*, 532 F.2d 641 (8th Cir. 1976) (notebooks containing writings related to various drug transactions not hearsay as proof of character and use of place in which notebooks were found), *cert. denied* 429 U.S. 846, 97 S. Ct. 128, 50 L. Ed. 2d 117; *Collins v. State*, 977 P.2d 741, 746 (Ala. App. 1999) (day planner and "drug ledgers" not hearsay as circumstantial evidence that controlled substances were distributed on premises); *Guerra v. State*, 897 P.2d 447 (Wyo. 1995) (letter to defendant detailing proposed drug transaction not hearsay as circumstantial evidence that defendant deals in controlled substances).

[11] Brief for appellant at 15.

[12] Neb. Rev. Stat. § 27-801(3) (Reissue 2016) (emphasis supplied).

amounts of methamphetamine; they included notes with numbers, names, and addresses. The State offered these notebooks and notepads not to prove that a listed individual owed or paid money for a certain amount of methamphetamine, but to show that Schwaderer possessed the methamphetamine for purposes of sale and distribution. Thus, the notebooks and notepads were not offered to prove the truth of the matter asserted therein and did not constitute hearsay.

### (b) Authentication

Schwaderer additionally alleges that the notebooks and notepads were not properly authenticated, because the State did not adduce evidence or testimony establishing "the origin of the exhibits, the author of the exhibits, the handwriting in the exhibits, or the date the exhibits were created."[13] He concedes in his brief that the State did adduce testimony establishing that the notebooks and notepads were the same as those found within his vehicle. But, he argues this testimony was insufficient to support a finding that the exhibits were what the State claimed them to be.

[9-12] The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.[14] A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity.[15] If the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of Neb. Rev. Stat. § 27-901 (Reissue 2016).[16] Under § 27-901(2)(d), a proponent may authenticate a document by circumstantial evidence, or its "[a]ppearance,

---

[13] Brief for appellant at 20.

[14] *State v. Casterline*, 293 Neb. 41, 878 N.W.2d 38 (2016).

[15] *Id.*

[16] *Id.*

contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."[17]

The State presented the "owe notes" found within Schwaderer's possession as records of drug transactions. The State did not claim that Schwaderer authored the notes or was involved in the notated transactions, but merely alleged that *possession* of such notes was consistent with drug dealing. As such, the State was not required to prove that Schwaderer authored the notes or was involved in the transactions.[18]

The arresting officer testified that the notebooks and notepads presented at trial were the same he seized from Schwaderer's vehicle. And, a witness reviewed the notebooks and notepads and explained that the notations and language used within were consistent with records of drug transactions, specifically with the sale of methamphetamine. This was sufficient to authenticate the notebooks and notepads under § 27-901(2)(d).

Because the notebooks and notepads were not hearsay and were properly authenticated, the district court did not err in admitting them into evidence.

## 3. Jury Instructions

[13] Schwaderer assigns error to the court's cautionary instruction given at trial and to jury instruction No. 8. However, he did not properly preserve these errors for review. Schwaderer did not object to the cautionary instruction given at trial. And, though he did object to jury instruction No. 8, he argued that no instruction should reference the exhibits because the exhibits should not have been received into evidence. On appeal, he may not assert a different ground for his objection than was offered at trial.[19]

[14] We cannot find anything clearly erroneous or unduly prejudicial in the instructions given. It is best practice, when

---

[17] See *id.*

[18] See *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014).

[19] *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015).

overruling a hearsay objection on the ground that an out-of-court statement is not received for the truth of the matter asserted, for a trial court to identify the specific nonhearsay purpose for which the out-of-court statement is relevant and probative.[20] However, the cautionary instruction that the exhibits were not to be considered by the jury for the truth of the matter asserted was sufficient. Likewise, the final jury instruction was sufficient, because it specifically instructed the jury not to consider the exhibits for the truth of the matter asserted.

The district court's instructions to the jury, read together and taken as a whole, correctly advised the jury that the notebooks and notepads were not to be considered for the truth of the matter asserted. They correctly stated the law, were not misleading, and adequately covered the issues raised by the evidence. For these reasons, the district court did not err in its instructions to the jury.

## 4. Expert Testimony

Schwaderer next alleges that the witness who previously worked with the narcotics unit was not an expert witness. He argues that the witness was not properly qualified and that the court did not follow the proper procedure in determining whether expert testimony was admissible. The State argues that Schwaderer waived this argument. We agree.

[15] Failure to make a timely objection waives the right to assert prejudicial error on appeal.[21] At trial, Schwaderer continuously objected to the witness' testimony on foundation and relevance grounds and challenged the qualifications of the witness during closing argument. But, he never specifically objected to the witness' qualification as an expert or asked the court to make specific findings as to the witness' qualifications. And, he cannot assert a new ground for

---

[20] See *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010).

[21] *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

his objection to the witness' testimony for the first time on appeal.[22] Therefore, Schwaderer waived his right to assert this assignment of error.

### 5. Ineffective Assistance of Counsel Claims

#### (a) Preliminary Matters

[16,17] Schwaderer is represented on direct appeal by different counsel than the counsel who represented him at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred.[23] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief will recognize whether the claim was brought before the appellate court.[24]

[18] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[25] The determining factor is whether the record is sufficient to adequately review the question.[26]

Schwaderer asserts several claims of ineffective assistance of counsel. A few of his claims overlap and have been combined and restated for review. Schwaderer alleges that he received ineffective assistance of counsel when trial counsel failed to (1) renew his motion to suppress at trial, (2) obtain

---

[22] See *State v. Samayoa, supra* note 19.

[23] *State v. Loding, ante* p. 670, ___ N.W.2d ___ (2017).

[24] *Id.*

[25] *State v. Parnell, supra* note 5.

[26] *Id.*

independent testing and weighing of the methamphetamine, (3) request a preliminary hearing and specific findings on the qualifications of the State's expert witness, and (4) object to the State's closing argument, which was inconsistent with the limiting instruction on exhibits 11 through 15.

The record is insufficient to address his second claim concerning the failure to obtain independent testing and weighing of the methamphetamine, but the record is sufficient to resolve the remaining three claims.

### (b) *Strickland* Analysis

[19] To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*,[27] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[28] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[29] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[30] A court may address the two prongs of this test, deficient performance and prejudice, in either order.[31]

### (i) Failure to Renew
### Motion to Suppress

Schwaderer alleges that his trial counsel was ineffective for failing to renew his motion to suppress at trial and thus waiving the issues presented in his motion to suppress. However, he cannot show deficient performance or prejudice on this claim.

---

[27] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[28] *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

[29] *Id.*

[30] *Id.*

[31] *Id.*

Schwaderer's motion to suppress alleged that the warrant-less stop, detention, and search of Schwaderer and his vehicle were unlawful. The evidence presented at the motion to suppress hearing established that the arresting officer identified Schwaderer before making the stop and that the arresting officer was advised that Schwaderer had a suspended license. The officer thus had reasonable suspicion to initiate the stop.

Once stopped, the officer approached Schwaderer, identified himself as law enforcement, and asked Schwaderer for identification. Schwaderer claimed he had no identification and, when asked to confirm his name, claimed to be his brother, "William Schwaderer." Because he knew this to be false based on the information within the Nebraska Criminal Justice Information System, the officer requested another officer in the area to come and assist him in detaining and investigating Schwaderer.

The arresting officer asked Schwaderer to exit the vehicle to perform a safety pat down, after which he noticed what appeared to be a wallet in Schwaderer's pocket. The officer then asked whether Schwaderer had identification in that wallet. At this point, Schwaderer admitted that he was, in fact, "Robert Schwaderer" and the arresting officer arrested him for driving under suspension and false reporting.

The arresting officer and the assisting officer conducted a valid search incident to arrest for contraband and weapons before placing Schwaderer in the police cruiser. The search yielded items that the arresting officer testified were "common with narcotics use or distribution" and a large amount of methamphetamine.

The assisting officer testified that he then conducted a search of the vehicle for further evidence of contraband and to inventory the contents prior to the vehicle being towed away. That search yielded the notebooks and notepads containing records of narcotics sales. Because the contraband discovered during a lawful search incident to an arrest provided the probable cause for the further warrantless search of

the vehicle, the subsequent search did not violate the Fourth Amendment.

[20] As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.[32] Because there was no merit in the initial motion to suppress, Schwaderer's counsel was not ineffective for failing to renew the motion at trial.

### (ii) Failure to Object to Expert Witness' Qualifications

Schwaderer alleges that his trial counsel was ineffective for failing to request specific findings and a preliminary hearing to determine the qualifications of the State's expert witness. This claim is also without merit because Schwaderer cannot show prejudice.

Even if trial counsel had objected to the witness' qualifications or requested a preliminary hearing, the result would not have been different. Under our analysis in *State v. Russell*,[33] there was sufficient foundation to allow the witness to testify to the interpretation of the terms used within the notebooks and notepads. The witness' testimony was rationally based on the perception of the witness and the testimony was helpful to the determination of a fact in issue.

Because the witness would have qualified as an expert witness, or at the very least would have been allowed to testify to the same matters as a lay witness based on his experience and perception, Schwaderer was not prejudiced by trial counsel's failure to object to the witness' qualifications or to request a preliminary hearing on the matter.

### (iii) Failure to Object to State's Closing Argument

Lastly, Schwaderer alleges that his trial counsel was ineffective for failing to object to the State's closing argument insofar as it was inconsistent with jury instruction No. 8.

---

[32] *Id.*

[33] *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016).

Again, he cannot show deficient performance or prejudice on this claim.

The State's closing argument referred to the notebooks and notepads as "owe notes" and emphasized that the writing within was consistent with the distribution of methamphetamine. At no point did the State suggest that the transactions notated actually occurred or claimed that the writings were proof Schwaderer received the listed amounts of money in exchange for methamphetamine. Therefore, the State's closing argument was not inconsistent with jury instruction No. 8, which admonished the jury not to consider the notebooks and notepads for the truth of the matters asserted.

Schwaderer's counsel was not ineffective for failing to make a meritless objection to the State's closing argument. Schwaderer has failed to show ineffective assistance of counsel.

## 6. REMAINING ASSIGNMENTS OF ERROR

We have carefully considered Schwaderer's remaining claims—that there was insufficient evidence and that he received excessive sentences—and find them to be without merit. He premises his claim of insufficient evidence on his arguments that certain evidence and testimony should have been excluded and asserts that the remaining evidence was insufficient to support the convictions. We have already rejected these arguments. He also failed to establish that the district court abused its discretion in imposing his sentences.

## VI. CONCLUSION

For the reasons set forth above, we conclude that the district court did not err in allowing the challenged exhibits and testimony into evidence or in its instructions to the jury. We also conclude that three of the four claims of ineffective assistance of counsel are without merit. The record is insufficient to resolve the remaining claim on direct appeal. Because Schwaderer's other assignments of error are without merit, we affirm the judgment of the district court.

AFFIRMED.